UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ZACHARY D. REINDERS, | ) |
|             Plaintiff, | ) |
|             v. | ) No. 2:22-cv-00281-JPH-MG |
| CLARKE, *et al.*, | ) |
|             Defendants. | ) |

**ORDER GRANTING IN PART AND DENYING IN PART CENTURION DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT**

Zachary Reinders alleges that prison officials and medical professionals at Wabash Valley Correctional Facility were deliberately indifferent to his threat of suicide, his serious medical and mental health needs, and to the conditions of his confinement after he cut himself. Defendants Sarah Clarke, Sara Bedwell, and Lauren Cupp—the Centurion defendants—filed a motion for summary judgment. For the following reasons, the Centurion defendants' unopposed summary judgment motion is **granted in part** and **denied in part**.

**I. Legal Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 572 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Because Mr. Reinders declined to respond to the Centurion defendants' motion, the facts they allege are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II. Background

**A. Facts**

Mr. Reinders declined to respond to the Centurion defendants' summary judgment motion and the time to respond has passed. Dkt. 64 ("I will not be filing a motion in response to the Defendants [*sic*] partial motion for summary judgement."); dkt. 63. With one exception, the Centurion defendants' factual assertions are supported by citations to evidence and therefore admitted without controversy. S.D. Ind. L.R. 56-1(f). The following facts are drawn from the defendants' statement of undisputed facts.

At all times relevant to Mr. Reinders' allegations, Sara Bedwell was the Health Services Administrator (HSA), Sarah Clarke was a mental health professional, and Lauren Cupp was a registered nurse, all at Wabash Valley Correctional Facility. Dkt. 49 at 2; 5; 12. Centurion Health of Indiana, LLC, employed them to care for Wabash Valley inmates pursuant to Centurion's contract with the Indiana Department of Correction (IDOC). *See* dkt. 11 at 2.

On February 2, 2022, during routine mental health rounds, Mr. Reinders asked Ms. Clarke for time out of his cell because his neighbors were "driving [him] crazy." Dkt. 49 at 5. Ms. Clarke said she would convey his request to a custody officer and schedule him for an out-of-cell mental health appointment. *Id.*

As Ms. Clarke completed her rounds, *id.*, Mr. Reinders yelled that she was not doing her job, called her vulgar, degrading names, and stated that he was suicidal. *Id.* Ms. Clarke notified a custody officer of this behavior and

3

then left the range. *Id.* at 6. Ms. Clarke states that she judged Mr. Reinders' statement that he was suicidal to be an expression of anger toward her and an effort to manipulate the staff into moving him to a different unit—not a sincere statement that he intended to harm himself or believed he would do so. *Id.* at 6.

About an hour later, Ms. Clarke was notified that Mr. Reinders had cut himself. Dkt. 49 at 6. She visited his cell and observed numerous cuts on his arm. *Id.*

Nurse Cupp also came to Mr. Reinders' cell and observed 20 small, superficial cuts and one longer, superficial cut on Mr. Reinders' arm. *Id.* at 13. She observed blood that was smeared on Mr. Reinders' arm cleaned and disinfected the cuts, and applied island dressings. *Id.*

Ms. Clarke saw the blood smeared on Mr. Reinders' arm and inferred that he "attempted to increase the dramatic effect of his behavior by giving the appearance of a more significant wound." *Id.* at 6. When Ms. Clarke remarked to an officer that Mr. Reinders' cuts didn't "look too bad," Mr. Reinders yelled and cursed at Ms. Clarke. *Id.* at 7. Ms. Clarke believed that Mr. Reinders' cuts "were alarming," but they were not evidence of "life-threatening behavior." *Id.* Again, Ms. Clarke states that she judged that Mr. Reinders was expressing anger and trying to manipulate a housing change rather than truly attempting suicide. *Id.*

Regardless of whether Ms. Clarke thought that Mr. Reinders was suicidal and a risk to himself, she placed him on suicide watch, where he remained

4

through February 7. Dkt. 49 at 7, 8. Throughout that time, Mr. Reinders stated that he was not suicidal and wished to be released. *Id.* at 7–8. Although Ms. Clarke believed that Mr. Reinders was never truly suicidal, she left him on suicide watch because he recently cut himself. *Id.* at 7.

Ms. Clarke met with Mr. Reinders outside his suicide watch cell throughout this period. *Id.* at 7–8. She does not address Mr. Reinders' allegations that conditions in the cell were inhumane, including that feces were smeared on the walls and that he was forced to sleep on the floor. *See* dkt. 11 at 2. The defendants also do not address Mr. Reinders' allegations that his bandages fell off, leaving his wounds open and bleeding in the unsanitary cell. *Id.* at 2–3.

Ms. Clarke met with Mr. Reinders on February 8, and he denied any significant mental health issues. Dkt. 49 at 8. On February 14, Mr. Reinders expressed frustration at his continued placement in a restricted unit, and Ms. Clarke encouraged him to engage in a goal-setting exercise before their next meeting. *Id.* at 8–9. Mr. Reinders declined mental health sessions with Ms. Clarke on February 23 and March 7. *Id.* at 9.

On February 9, 2022, Mr. Reinders submitted a grievance concerning the February 2 incident and his subsequent placement on suicide watch. *Id.* at 3. Ms. Bedwell received the grievance on February 14 and responded in writing on February 24. *Id.* at 4. Ms. Bedwell's response noted that Ms. Clarke did not find Mr. Reinders' threats of self-harm sincere based on his conduct on February 2, and Ms. Bedwell characterized the grievance as frivolous. Dkt. 48-

5

1 at 28. There is no evidence that Ms. Bedwell had any involvement in or knowledge of Mr. Reinders' medical or mental health care after responding to this grievance.

### B. Claims

Mr. Reinders brings Eighth Amendment claims against Ms. Clarke and Nurse Cupp based on allegations that they "harmed Mr. Reinders by being deliberately indifferent to his threats of suicide, his needs for emergency medical and mental health care, and the dangers presented by the unsanitary conditions in his holding cell." Dkt. 11 at 3–4. He also brings an Eighth Amendment claim against Ms. Bedwell based on allegations that she "received and disregarded grievances detailing Mr. Reinders' serious mental health needs and the inadequacy of his care, and this has perpetuated his condition and the staff's deliberate indifference." *Id.* at 4. Finally, Mr. Reinders' brings an Eighth Amendment claim for injunctive relief against Ms. Clarke in her official capacity. *Id.* at 4–5.

### III. Analysis

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials"—and private actors like the Centurion defendants who contract to treat prisoners—"can be liable for violating the Eighth Amendment when they display deliberate indifference towards an

objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Centurion defendants do not dispute that Mr. Reinders' threats of suicide, cutting himself, or his physical and mental condition after cutting himself were objectively serious under the Eighth Amendment. Rather, they argue that they were not deliberately indifferent to the risks presented by these conditions. So the only issue for the Court is whether there is evidence from which a reasonable trier of fact could conclude that they "consciously disregarded a serious risk to [Mr. Reinders'] health." *Dean v. Wexford Health Sources*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

"Deliberate indifference requires more than negligence or even objective recklessness." *Id.* Rather, Mr. Reinders "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis removed).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean*, 18 F.4th at 241 (internal citations omitted).

### A.   Nurse Cupp

Nurse Cupp correctly argues that she is entitled to summary judgment because the record shows that her involvement in Mr. Reinders' claims was limited to providing "reasonable and appropriate medical care for his arm wounds."  Dkt. 49 at 23.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.  No evidence indicates that Nurse Cupp knew about Mr. Reinders' threats of self-harm before he cut himself.  Mr. Reinders alleged in his complaint that his bandages fell off, exposing his wounds to the filth of his cell while on suicide watch.  He has not, however, designated evidence that Nurse Cupp treated his wounds after February 2 or that she knew that Mr. Reinders had serious medical conditions that were not being treated or of the unsanitary conditions in his cell.[1]  There is no designated evidence from which a jury could reasonably infer that Nurse Cupp was deliberately indifferent to Mr. Reinders' serious medical needs or the conditions of his cell.

### B.   Ms. Bedwell

Ms. Bedwell correctly argues that she is entitled to summary judgment because the undisputed record shows that her involvement with Mr. Reinders'

---

[1] Mr. Reinders thinks he may have given Nurse Cupp a healthcare request form but was not sure.  Dkt. 55-2 at 55.  Assuming he did, that evidence would not support a claim for deliberate indifference against Nurse Cupp.  Mr. Reinders testified that after submitting the form, medical staff returned the next day, spoke with Dr. Byrd, and prescribed him an antibiotic ointment.  *Id.* In other words, appropriate action was taken in response to his submission of the form.

8

claims was limited to investigating and responding to his grievance concerning the events of February 2 and his confinement on suicide watch. Denying an inmate's grievance does not violate the Constitution. *See, e.g., McGee v. Adams*, 721 F.3d 474, 485 (7th Cir. 2013) ("McGee's claims against . . . the individuals who ruled against McGee on the institutional grievances he filed . . . fail as a matter of law."); *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").

No designated evidence supports an inference that Ms. Bedwell knew about Mr. Reinders' threats before he cut himself or about his cell conditions while he was on suicide watch. Further, no designated evidence supports an inference that Ms. Bedwell received other grievances regarding Mr. Reinders' medical or mental health care or that she exposed Mr. Reinders to additional harm by preventing his grievances from reaching an official who could help him. Ms. Bedwell undisputedly took one action related to Mr. Reinders' claims, and it did not violate the Constitution.

**C.   Ms. Clarke**

Ms. Clarke argues that she is entitled to summary judgment because the undisputed evidence shows that she did not knowingly disregard a serious threat of self-harm either before or after Mr. Reinders cut himself on February 2. But she does not address the other part of Mr. Reinders' Eighth Amendment

9

claim—that Ms. Clarke was deliberately indifferent to risks posed by inhumane conditions in Mr. Reinders' suicide watch cell.  Dkt. 1 at 10 ¶ 40; dkt. 11 at 3–4.

Under the Eighth Amendment, "prisoners cannot be confined in inhumane conditions."  *Thomas v. Blackard*, 2 F.4th 716, 720 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  A conditions-of-confinement claim includes objective and subjective components.  *Giles v. Godinez,* 914 F.3d 1040, 1051 (7th Cir. 2019).  Under the objective component, a prisoner must show that the conditions were objectively serious and created "an excessive risk to his health and safety."  *Id.* (cleaned up).  Under the subjective component, a prisoner must establish that the defendants had a culpable state of mind—that they "were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference."  *Thomas*, 2 F.4th at 720.

Here, Ms. Clarke placed Mr. Reinders on suicide watch, so he was kept in a holding cell.  Mr. Reinders alleged in his verified affidavit that his holding cell "smelled of sewage, had feces smeared on the walls, and the floor was littered with dirt and debris."  Dkt. 1 at 8 ¶ 34.  Mr. Reinders further alleged in his verified complaint that Ms. Clarke visited him on February 5, 2022, dkt. 1 at 10 ¶ 40, after he had "showed both defendants Ashba and Yarborough the filthy conditions" in his cell, dkt. 1 at 8-9 ¶¶ 35-39.  Ms. Clarke acknowledges that she met with Mr. Reinders on multiple occasions while he was on suicide watch.  Dkt. 48-3 ¶¶ 16; 17; 19; 20; 22.  She states that some of these meetings

10

took place "at the A West holding cell front", *e.g., id.* ¶ 19, and others took place "at his cell front", *e.g., id.* ¶¶ 20; 22.  Her affidavit does not explain, however, whether the "A West holding cell front" and Mr. Reinders' "cell front" are the same place.  Drawing all reasonable inferences in the light most favorable to Mr. Reinders as the Court must at this stage of the proceedings, the facts could support a finding that Ms. Clarke visited Mr. Reinders on multiple occasions at the holding cell that he described as "smell[ing] of sewage, had feces smeared on the walls, and the floor was littered with dirt and debris." Dkt. 1 at 8 ¶ 34.  Therefore, a jury could reasonably conclude that Ms. Clarke observed and knew of deplorable conditions in Mr. Reinders' cell yet took no action to remedy the situation.  Ms. Clarke is not entitled to summary judgment.

### IV. Conclusion

The Centurion defendants' motion for summary judgment, dkt. [48], is **GRANTED** as to Defendants Bedwell and Cupp and **DENIED** as to Defendant Clarke. The **clerk is directed** to **terminate** Defendants Bedwell and Cupp from the docket. No partial final judgment will issue.

**SO ORDERED.**

Date: 9/13/2024

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ZACHARY D. REINDERS
179119
O-4 116A
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels

11

1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All electronically registered counsel